Our next case of the day is Freeman v. Pierce, No. 16-1229.  Harker Rhodes May it please the Court. My name is Harker Rhodes and I represent Petitioner-Appellant James Freeman. To its credit, the State on Appeal abandons almost all of the arguments on which the District Court and the Illinois Courts rely. The State abandons any procedural default argument. It does not defend the Illinois Trial Court's ruling that Mr. Freeman could be denied his self-representation because he had only an eighth-grade education. And most important here, the State concedes that Mr. Freeman did make an unequivocal request to represent himself in his written motion to proceed pro se. That is, the State abandons the Illinois Appellate Court's argument that at the time that motion was made, the motion was somehow equivocal. That leaves the State with only two reasons for nevertheless affirming the decision below. First, the State argues that even though the written motion to proceed pro se was unequivocal at the time it was made, that motion somehow became equivocal after the trial judge squarely denied that motion because Mr. Freeman didn't raise the motion again when new counsel was appointed. Well, that's the last sentence you say, when new counsel was appointed. Originally, he wanted to get rid of Foster. That's correct, Your Honor. And twice. You know, he did not want that lawyer. And that's where he's insisting pro se, et cetera. That lawyer goes away and the new one comes in. I forget his name. Yes, Your Honor. But it is unreasonable under Ferretta to say that just because Mr. Freeman didn't raise his motion after it had been squarely denied, that motion somehow became equivocal. In Ferretta itself, Mr. Ferretta made his motion for self-representation. That motion was squarely denied. And as Chief Justice Berger says in his dissent, after that point, Mr. Ferretta never again expressed dissatisfaction with his counsel. He made three other motions to substitute counsel. But after that, he never said, oh, I'm still unhappy with my counsel. I still want to represent myself. And in fact, Mr. Ferretta proceeded to trial with his counsel. On the state's argument, you could say there as well, well, because Mr. Freeman didn't continue to raise his argument, it somehow became equivocal in light of subsequent events. For a year and a half. Excuse me? He was in a year and a half with the substitute lawyer. Your Honor, it's true that substitute counsel was appointed. But again, after the motion had been squarely denied, and in particular in light of the reasons that the trial court gave for denying that motion, there was no reason to think that Mr. Freeman had somehow abandoned his desire to represent himself. Remember, the trial court denied Mr. Freeman's motion because he had only an eighth grade education and because the trial court thought he didn't have the necessary experience and abilities to represent himself. That simply did not change when new counsel was appointed. If Mr. Freeman had made his motion again at the point when new counsel was appointed, the trial court would have said again, I'm sorry, you still have only an eighth grade education. You still lack the necessary experience and abilities to represent yourself. Even if Mr. Freeman had been an experienced lawyer, he would have had no reasonable ground for raising again his motion to represent himself just because new counsel had been appointed. And at that point, it's simply unreasonable under Ferretta to place the burden on him to make a motion that would clearly have been a frivolous. Mr. Rose, you and the state have talked about some of the cases from other circuits that have dealt with variations on this scenario under Ferretta. Would it be accurate to say that the key issue in those cases is about whether you need to keep complaining about the, or keep saying you want to represent yourself, that the key issue is whether the trial court has definitively denied the request for self-representation? Yes, Your Honor, that's correct. And that's exactly why this case is different from Campbell, from Johnson in this circuit, and from Cain versus Peters. Because in each of those cases, the defendant either subsequently withdrew his request to represent himself, as in Campbell, when the trial court asked Mr. Campbell, well, you don't really want to represent yourself, do you? Mr. Campbell said, oh, no, no, I don't. Or in cases like Johnson and Cain, the trial court simply never ruled on the motion for self-representation. And in that situation, of course, it's perfectly reasonable for the court to conclude, well, because the defendant didn't insist on a ruling on his motion for self-representation, he must have abandoned it when he proceeded to trial. But that's totally different from the case here, where the trial court firmly told Mr. Freeman, I am not going to permit you to represent yourself because of your lack of experience and ability. Mr. Rhodes, one of the concerns in this area of the law, I mean, it drives trial judges crazy because of the damned if you do, damned if you don't danger. One of the concerns that this court has written about in this context is a concern about sandbagging, about going forward with counsel and just kind of having tucked away this ace up the sleeve to be able to set aside any later conviction. Under your approach, how is that problem addressed? Your Honor, two things. First of all, to a certain extent, Ferretta recognizes that there is some danger that allowing a defendant to choose the right of self-representation will lead to the possibility that a defendant will not do a good job representing himself. That's just one of the risks that comes with Ferretta. But with specific response to the sandbagging. That's not it. I'm talking about the sandbagging with respect to the request for the rights. Of course, yeah. And then saying, oh, I didn't waive it voluntarily, et cetera. Of course, Your Honor. And to be clear, a trial court, and this is the response I should give directly to that question, the trial judge has discretion, of course, to say, I'm denying this motion because I think that you are just engaging in gamesmanship. You're trying to simply game the system. When the defendant makes a clear and unequivocal request to proceed pro se and makes that informed and intelligent choice, the trial court is required under Ferretta to permit him to represent himself. If the defendant later appears to be flip-flopping back and forth on that choice, the trial judge has the discretion to say, I'm not going to let you simply change your mind to obtain a continuance or because I think you're trying to create a false issue for appeal because I think you're trying to sandbag a later appellate question. But that's simply, again, not the case here. There's no indication that when Mr. Freeman made his initial motion to proceed pro se, he was really just trying to create an appellate issue. Indeed, he was quite forceful in insisting that he genuinely wished to represent himself. This is a man who, after he made his motion, after his motion was denied, insisted repeatedly that he would not go to trial with this counsel and, indeed, went so far as to walk out of the room when the trial judge continued to insist on his ruling. I was wondering if anybody can tell us how that happened. I was not present at the trial myself, Your Honor, and so I can't speak to that issue directly. Not having been appointed. No, I was not appointed at that point, Your Honor. But to be clear, I think the important question here is the question of the Illinois appellate court's determination, which was that at that point, the Illinois appellate court said Mr. Freeman's motion was somehow still equivocal. And that determination is simply unreasonable under Ferretta. I'd also like to briefly address the state's alternative argument, which it raises for the first time in this court that Mr. Freeman somehow later acquiesced, that is that he voluntarily relinquished his previously asserted right to self-representation by proceeding to trial with counsel. Now that is not an argument that the state ever raised below. The word acquiescence does not appear in the state's briefing in the district court here. But they did argue waiver. Your Honor, they did argue waiver in the sense of vacillating positions causing waiver, but they never raised the acquiescence argument. And so there was never a factual finding, either by the district court or by the Illinois appellate court, that Mr. They didn't use that word? Sorry, the word acquiescence does not appear in the state court's briefing to the district court. If I understand your position correctly, it doesn't make any difference. That's correct, Your Honor, because even if Once he says I want to represent myself, and the judge denies it, the fat's in the fire. I think maybe except for some rare circumstance that I can't consider at this moment. At the moment, you can't think of one. At the moment, I cannot think of a situation in which a clear and unequivocal request. At least we know where you stand and you're in to your rebuttal. And I would like, if I may, to reserve the remainder of my time for rebuttal. Thank you, Your Honors. Thank you, Mr. Rhodes. Let's see, Mr. McLeish. Good morning, Your Honors, counsel. I'm Assistant Attorney General Brian McLeish on behalf of the Respondent Morden. And I'd like to begin by saying that this is the rare circumstance, because it is rare for a trial court to err and deny a motion to proceed pro se, and then immediately thereafter for the petitioner or the defendant to get what he wanted, which was to get rid of the lawyer. That's what makes this case different from forever. Well, his motion did say he wanted to go forward with self-representation, correct? His motion did say that, and he also said in that motion that the reason he wanted to go for, and this is a run-of-the-mill reason for wanting to go for representation. People are never asked for self-representation when they're happy with their lawyers. Correct. And so that is not what makes this case unusual. What makes this case unusual is that he then got rid of that lawyer that he was unhappy with. And it wasn't the trial court's doing. However, in fact, he got rid of that lawyer, and the state court found that what he wanted was a different lawyer and not Foster. He got a different lawyer than Foster. He said that, and it was a means to an end. He didn't put any equivocations on there, did he say? But if you give me another lawyer, I will consider it? Not in the motion itself, but this case, this court has held it. What do you mean not? He didn't say that at the time he asked to represent himself. He didn't say, if you give me a different lawyer, I will change my mind or I will give it some thought. In the first hearing, so no, not in that motion, Your Honor. Attaboy. May I continue talking? Yes. So not in that motion, Your Honor. But in the original hearing, before he filed this motion, he said, you know, when he accepted counsel again, he said, I really don't want this lawyer. I got rid of this lawyer for a reason. Are you talking about the earlier episode when the state brought in the capital charges, right? Correct, Your Honor. OK. So well before the request made, that's an issue here. Yes, Your Honor. And then in the motion itself, he listed the reasons that he didn't want this attorney. I think we can all agree that the reason he wanted to represent himself is because he didn't want this lawyer. And there is no Supreme Court precedent, there is no circuit court precedent, where a defendant complains about his lawyer and asks to go pro se because he doesn't like his lawyer. Then immediately before the next trial date, a new lawyer files an appearance. And he gets rid of that lawyer, gets what he wanted, and then there is still a violation of the right to self-representation, particularly when 18 months throughout trial, not only does he not jump up and down and raise a new motion, but he did jump up and down and raise a new motion when the motion was denied. He said, I'm not going to trial this lawyer. I'm not going to trial this lawyer. He walked out. And then he walked out. He said, I'll be tried in extension. I understand your theory is that he has to be vehement in his discussion and keep at it. That is not our theory. That is not our theory. Our theory is that the state appellate court reasonably found, as a matter of fact, that in this situation where he got a new lawyer, it looks like he got what he wanted, then he has to do something in the next 18 months, file a post-trial motion. He didn't even file a post-trial motion complaining about his... This is revisionist history. What he said he wanted was to represent himself. He didn't get that. Is there any other area in the law where a party who loses a definitive ruling in the trial court is required to keep raising the issue in order to preserve his right to appeal? No, Your Honor. And he's not required to do so in this context either. The general rule, of course, is that you don't have to raise it again. Our position is that in this situation, the appellate court made a finding of fact that because what he wanted was new counsel and because what he got was new counsel, that in the 18 months thereafter, before he got another lawyer who dug through the record and found an error, that he would have said something. The fact that he didn't shows that he got what he wanted. So you think what we've got is a 2254 D2 finding of fact about what Mr. Freeman really wanted, notwithstanding what he said in the motion, what he said in the hearing, and his indication that he didn't want anybody from this operation, the homicide operation of the Public Defender's Office. Well, I agree with the first half of that statement, is that we have a 2254 D2 finding of fact, and that's on A56 in the appellate court's opinion in the appendix. And I disagree that it's notwithstanding the motion and it's notwithstanding the transcripts as we all agree, he didn't want this lawyer. That was the motivation for his motion. He made it clear in both hearings and he made it clear in the motion before the judge ever asked him why he wanted to proceed pro se. Now there is a tricky factual issue with regard to the statement that I don't think any member of this Public Defender's Office can adequately represent me. And so that was one of the factors before the state appellate court. Oh, and so, and the state appellate court considered that fact. There were many facts, most of them suggesting that he was really fed up with Foster. He called this a conflict of interest. The state appellate court took all those facts together, made a finding of fact that what he really wanted to do was to get rid of Foster, and that's what he got. I would also quickly point out that- How do you square that with Ferretta itself? Because in Ferretta he didn't get a new lawyer. He didn't get what he wanted. In Ferretta he asked for a new lawyer only after the fact. But there's a very good reason to think that Ferretta would have turned out differently had after the fact he'd been granted that non-public defender. Why do you say that? Why is there a very good reason to think that? I don't know how Ferretta would have turned out, but it was clear from Ferretta that he didn't want an attorney from the Public Defender's Office. He so had, and then he later asked for a new attorney. Had he gotten a different attorney, I think we can't predict, and the state appellate court shouldn't have to predict how that case would have come out. Instead, the state appellate court made a reasonable factual finding that what he wanted was to get rid of Foster. What he got was to get rid of Foster. I would also like to point out that all these arguments were before the state appellate court, and you can look to the state court briefs there where the states argue acquiescence, particularly on record pages 1667 to 68, and they argue that the arguments in the state appellate court were very much parallel to the arguments before this court. There was other stuff going on, and maybe even other arguments made on this issue, but it was similar. The state argued acquiescence, and it jumbled it all together because, frankly, these are fuzzy lines. The language of the state appellate court is language that you all have abandoned. The record thus reflects defendants' vacillating positions in courtroom behavior regarding representation, leading us to conclude that he did not unequivocally invoke his right to self-representation. You disagree with that conclusion, correct? No, we do not disagree with that conclusion. You think that's right? We think that the vacillating behavior came before and after the motion. Where do you find the vacillating behavior? The vacillating behavior was first, well, accepting counsel, then getting rid of counsel, then after the fact, not filing the post-trial motion, participating with counsel, saying he agreed with trial counsel's strategy, and for 18 months never speaking up. Also, so we don't disagree. We acknowledge that the motion on its face was unequivocal, just like it was in Candler's case. He was being hassled by the judge to take somebody. In 2006? No. All the way through. I would disagree with the term hassled, but no doubt the judge, in the interest of the defendant, was— Every time the defendant said he wanted to represent himself, the judge not only discouraged him and told him, you're making a terrible mistake, you don't have an absolute right to represent yourself. We have to look into this thing. You think about it to make sure—I already have thought about it. I don't want anybody representing but me. And the first time the judge did that—and there's no dispute that the trial court— But he eventually caved into his honor, beating him up. We don't dispute that the trial court erred. The only reason that we're here is because he got what he wanted by, you know, probably by the public defender's office recognizing the trial court's arrest of a new attorney. My concern, Mr. McLeish, is you're endorsing the appellate courts finding that this was not an unequivocal request. The trial court certainly understood it as a clear request that was denied on reasons that clearly are invalid under Ferretta. Correct, Your Honor. What do we make of the fact that the appellate court seems to be trying to fuzz up what was perfectly clear to the trial judge? I think the trial—the appellate court got a messy situation that is not presented anywhere in the Supreme Court precedent. And its main finding, in fact, is petitioner got what he wanted. And they—I will not defend—you know, if we were grading the appellate court's opinion as a law school exam, it would not receive high marks. However, they made that factual finding, and there is no Supreme Court or circuit court precedent holding that when a defendant asks to go pro se because he wants a new lawyer, says he wants a new lawyer, or says he wants a different lawyer, then gets a different pro se is nevertheless violated. Unless Your Honor has had further questions, we ask you to affirm the district court's judgment. Can you point us to any cases where the trial court definitively denied an unequivocal request for self-representation, and the courts found waiver or acquiescence by not renewing the request? No, we cannot, Your Honor. Just as petitioner cannot point to any case where he wanted a new lawyer, got a new lawyer, and then there was nevertheless a finding that his right to self-representation was violated. Thank you. Thank you, Your Honor. Rebuttal, Mr. Rhodes. You now have a stable target of a claim of a D-2 finding that's due factual deference under D-2. Yes, Your Honor. First, I'm not sure that the Illinois Appellate Court actually made the finding that the state now claims. What the Illinois Appellate Court actually said was, the record reflects the defendant's request to proceed pro se was primarily based on his objection to representation by certain counsel rather than a decision to self-represent. That's the aspect that the state is pointing to. And on that point, Your Honor, it's true it was an objection to certain counsel. The objection was to any counsel that was from the public defender's office. And the motion to proceed pro se is entirely clear on that. On that point, Mr. Freeman's request is exactly the same as the request in Ferretta. He simply did not believe that any member of the public defender's office could represent him adequately. And for that reason, he chose to represent himself. Ferretta squarely bars the argument that the state is making here. Second, with respect to the final point that was raised by the other side as to whether there is any circuit case that finds a violation of self-representation when new counsel has been appointed. As I was preparing for the argument last night, I looked at the citation in Wilson v. Walker, which was cited in our briefs, to United States v. Arlt, that's A-R-L-T. And in that case, the defendant, that's at 41 F. 3rd 516. In that case, the defendant requested substitute counsel and was given substitute counsel all after his request for self-representation had been firmly denied. That's the same situation that was presented here. But more importantly, the key fact here is simply that Mr. Freeman made a clear and unequivocal request for counsel. That request was denied, and Mr. Freeman never subsequently withdrew that request. His silence does not constitute a waiver of his right to proceed pro se, and it does not make his initial invocation of that right equivocal in any way. If there are no further questions, we ask that the decision below be reversed and the Mr. Rhodes, you and your firm took this at the request of the court, is that correct? That's correct. We thank you for your service to both the court and the client, and we thank the state for its able representation as well. The case will be taken under advisement, and we'll move on to the last case of the day, which is